IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 12-cv-00919-PAB

ERNEST WAYNE FREEMAN,

  Plaintiff,

v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

  Defendant.
_____

**ORDER**
_____

  This matter is before the Court on plaintiff Ernest Wayne Freeman's complaint [Docket No. 1], filed on April 6, 2012. Plaintiff seeks review of the final decision of defendant Carolyn W. Colvin (the "Commissioner") denying plaintiff's claim for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-33 and 1381-83c.[1] The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).[2]

**I. BACKGROUND**

  On January 26, 2011, plaintiff applied for disability benefits under Title II of the Act. R. at 9. On April 25, 2011, plaintiff filed for supplemental security income under

---

[1] The Court has determined that it can resolve the issues presented in this matter without the need for oral argument.

[2] In light of plaintiff's pro se status, the Court construes his filings liberally. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 & n.3 (10th Cir. 1991).

Title XVI of the Act. *Id.* Plaintiff alleged that he had been disabled since July 28, 2010. *Id.* After an initial administrative denial of his claim, plaintiff received a hearing before an Administrative Law Judge ("ALJ") on October 28, 2011. *Id.* On December 9, 2011, the ALJ issued a decision denying plaintiff's claim. R. at 17.

The ALJ found that plaintiff had the following severe impairments: "status post hernia surgery, abdominal pain, and obesity." R. at 11. The ALJ concluded that these impairments, alone or in combination, did not meet one of the regulations' listed impairments, R. at 12, and ruled that plaintiff had the residual functional capacity ("RFC") to

> lift and/or carry 10 pounds occasionally and less than 10 pounds frequently; he can stand and/or walk for two hours out of an eight-hour workday with regular breaks; he can sit for six hours out of an eight-hour workday with regular breaks; he is unlimited with respect to pushing and/or pulling, other than as indicated for lifting and/or carrying; he must be given the option to alternate between sitting and standing positions every 35 to 40 minutes; he is limited to occasional climbing of ramps and stairs, but precluded from climbing ladders, ropes, or scaffolds; he is limited to frequent balancing and occasional stooping, kneeling, crouching, and crawling.

R. at 12. Based upon this RFC and in reliance on the testimony of a vocational expert ("VE"), the ALJ concluded that plaintiff was unable to perform any past relevant work, R. at 15, and that plaintiff was not disabled as "there are jobs that exist in significant numbers in the national economy that the claimant can perform." R. at 16.

The Appeals Council denied plaintiff's request for review of this denial. R. at 1. Consequently, the ALJ's decision is the final decision of the Commissioner.

## II. ANALYSIS

### A. Standard of Review

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *See Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). The district court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty*, 515 F.3d at 1070. Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### B. The Five-Step Evaluation Process

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period

of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(1)-(2). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006). The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. § 404.1520(b)-(f)). A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health and Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability. However, "[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and

work experience." *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005); *see also Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987). While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts." *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

### C.  The ALJ's Decision

Plaintiff argues that the ALJ erred by (1) failing to ask plaintiff whether he was under the influence of any medications before or during the hearing; (2) failing to consider all of plaintiff's impairments in determining that plaintiff was not disabled at step three; and (3) failing to consider or inquire of the VE whether plaintiff could perform work while under the influence of medications and while ambulating with a cane. Docket No. 19 at 2-3. Plaintiff also appears to argue that the administrative record does not contain evidence that he was examined at the Summit Medical Clinic in March 2011, after which he claims he was granted six months of disability. Docket No. 19 at 4.

#### *1. Influence of Medications*

Plaintiff argues that the ALJ failed to ask or consider whether plaintiff was under the influence of medications or other substances. Docket No. 19 at 4. Plaintiff claims he took medications prior to the hearing that made him "a little incoherent because of the dizziness and drowsiness side effects." *Id.* He asserts that "some of my answers to the ALJ's questions were probably inaccurate," but fails to specify any inaccuracies caused by his medications' side effects. *Id.* The ALJ, who listened to his testimony,

albeit via video teleconference, R. at 9, makes no reference to any signs of impairment.

Defendant argues that plaintiff's medical records contain no indication that his medications caused dizziness, drowsiness, or any other side effects. Docket No. 20 at 11. Plaintiff reports that he was taking methocarbamol, a muscle relaxer, atenolol, for high blood pressure, and aspirin. R. at 176. Plaintiff completed a personal pain questionnaire and reported no side effects from methocarbamol, ibuprofen, or aspirin. R. at 129. Notes from plaintiff's doctors visits on November 30, 2009, September 2, 2010, and January 31, 2011 do not indicate that he complained of any side effects from the prescribed medications. R. at 182-84, 186, 188-190. Consulting physician Dr. John Beauman's report does not indicate that plaintiff complained of any medication side effects. R. at 200. Physician's assistant Lisa Davenport's reports also do not indicate that plaintiff complained of any side effects. R. at 223-232. During the hearing, plaintiff did not mention medication side effects. Plaintiff has pointed to no evidence that he was suffering side effects from prescribed or over-the-counter medications and the Court has found none in its review of the record.

Defendant next argues that the ALJ was not required to ask plaintiff whether he was impaired by medication at the hearing. Docket No. 20 at 11. A claimant establishes the presence of an issue requiring further investigation by submitting "some objective evidence . . . suggesting the existence of a condition which could have a material impact on the disability decision requiring further investigation." *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997). The claimant must first satisfy his burden in this regard before the ALJ's duty to develop the record is implicated. *Id.* Although this duty is heightened somewhat where, as here, the claimant is

unrepresented, the "ALJ does not have to exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning." *Id.* at 1167-68.

Even assuming that a claimant's impairment or lack of impairment while testifying at a hearing could trigger a duty to investigate, plaintiff's medical records contain no objective indication that plaintiff suffered from medication side effects. The hearing is similarly devoid of testimony that would indicate that medication side effects would have a material impact on the disability decision and the hearing transcript offers no suggestion that plaintiff was disoriented, dizzy, drowsy, or otherwise impaired. Contrary to plaintiff's contention, the ALJ specifically asked plaintiff if he was still using alcohol or drugs and plaintiff responded that he was not. R. at 27-28. The ALJ asked plaintiff what medications he was currently taking and he responded: "Just a muscle relaxer, Methocarbamol and high blood pressure Atenolol and regular aspirin." R. at 29-30. Plaintiff also testified that over-the-counter aspirin was the only other pain medication he took and that he had taken aspirin twice on the day of the hearing. R. at 33-34. He did not indicate that he suffered side effects as a result of taking those medications and, despite being given repeated opportunities to raise additional issues, failed to raise any concerns regarding medication side effects:

> Q. Okay, is there anything that you want to tell me about that I haven't ask [sic] you?
>
> A. I do receive unemployment benefits.
>
> \*   \*   \*
>
> Q. Okay, anything else that you want to tell me?
>
> A. I think it was one more thing. I'm not sure if my blood pressure has been mentioned, my high blood pressure, yes, just still take, receiving medications

7

for that.

* * *

Q.  Okay, anything else?

A.  And, that's about it.

R. at 35-36. The Court finds that plaintiff has failed to meet his burden of producing objective evidence suggesting the existence of impairing medication side effects. *See Hawkins*, 113 F.3d at 1167. Moreover, even if such evidence existed, plaintiff fails explain what hearing testimony was affected by his alleged impairment. Simply stating that "some of my answers to the ALJ's questions were probably inaccurate" is insufficient for the Court to conclude that any alleged failure by the ALJ to develop the record on this issue had a material impact on the disability decision such that further investigation was required. *See id.* There is no basis for finding that the ALJ erred in failing to ask plaintiff if he were under the influence of medications or other substances during the hearing.

### 2. *Disability Based Upon Inflammatory Bowel Disease*

Plaintiff argues that the ALJ erred at step three in failing to find that he was disabled based upon all of his impairments. Docket No. 19 at 5. Specifically, plaintiff argues that his listed impairments met the requirements for inflammatory bowel disease ("IBD"), a condition listed in 20 C.F.R. Pt. 404, Subpt. P, app. 1. *Id.* Defendant argues that there is no interpretation of the record under which plaintiff would have met the requirements for IBD. Docket No. 20 at 15.

"At step three, the ALJ considers whether a claimant's medically severe

impairments are equivalent to a condition listed in the appendix of the relevant disability regulation." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (quotation and citation omitted).

> Inflammatory bowel disease (IBD) (5.06) includes, but is not limited to, Crohn's disease and ulcerative colitis . . . . Symptoms and signs of IBD include diarrhea, fecal incontinence, rectal bleeding, abdominal pain, fatigue, fever, nausea, vomiting, arthralgia, abdominal tenderness, palpable abdominal mass (usually inflamed loops of bowel) and perineal disease. You may also have signs or laboratory findings indicating malnutrition, such as weight loss, edema, anemia, hypoalbuminemia, hypokalemia, hypocalcemia, or hypomagnesemia.

20 C.F.R. Pt. 404, Subpt. p, app. 1 5.00.E.

The ALJ's decision stated: "The claimant's impairments are evaluated based on criteria set forth in Listing 5.00. The medical evidence does not document Listing-level severity, and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination." R. at 12. Thus, the ALJ considered the impairments set forth in Listing 5.00, which includes IBD.

Plaintiff fails to indicate what evidence in the record supports a diagnosis of IBD as it is his burden to do at step three. On September 2, 2010, during a behavioral health assessment, plaintiff reported that he was eating and sleeping well. R. at 186. On January 31, 2011, plaintiff complained of lower abdomen pain related to his hernia repair, R. at 183, but the physician's report also indicated that plaintiff appears well hydrated and well nourished and that his gastrointestinal system was "Non distended, Soft, No hepatosplenomegaly, No masses, Normoactive bowel sounds." R. at 184. A November 30, 2009 report listed similar observations concerning plaintiff's gastrointestinal system. R. at 190. Plaintiff complained to Dr. Beauman of pain in the

area where his hernia was repaired, but Dr. Beauman observed that plaintiff's abdomen was, "Soft, nontender, and nondistended. Bowel sounds positive. No hepatosplenomegaly or masses palpated" and his report does not otherwise mention any symptoms consistent with IBD. R. at 200-01. P.A. Davenport found that plaintiff was negative for nausea and vomiting, R. at 223, his CT scan was "normal," R. at 226, and lab work done in relation to pelvic pain was normal. R. at 228. On April 12, 2011, plaintiff complained to P.A. Davenport of abdominal pain on a severity scale of 7/10. R. at 231. P.A. Davenport found no associated symptoms and determined the pain to be related to plaintiff's hernia repair. R. at 231-32. The medical evidence does not otherwise mention any of the signs or symptoms listed in Appendix 1, 5.06, and there is no evidence that plaintiff was diagnosed with Crohn's disease or ulcerative colitis.

At the hearing, plaintiff testified to "excruciating pain" in his abdomen, but the pain was focused in the area where he had his hernia repaired. R. at 27. He claimed that he sought treatment for abdominal pain since January 2011, but that the pain persisted. R. at 31. Plaintiff did not offer any additional testimony describing his abdominal pain or revealing any other symptoms consistent with IBD.

Although, in his brief, plaintiff claims that his symptoms consisted of abdominal pain, palpable abdominal mass, and obstruction, the Court finds no evidence of the latter two symptoms in the record. The ALJ's finding that plaintiff's impairments did not meet IBD is supported by substantial evidence.

Plaintiff also argues that the combination of his more moderate impairments should have been used to determine that he suffered from other conditions listed in Appendix 1. Docket No. 19 at 5. Plaintiff does not point to a specific condition listed in

Appendix 1.  The Court interprets plaintiff's assertions of error on this point as an argument that the ALJ erred in failing to make sufficiently specific findings at step three.  A "bare conclusion" at step three can require remand in some instances.  *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).  However, the ALJ's failure to make specific findings at step three can be harmless error when "the ALJ's confirmed findings at steps four and five of his analysis, coupled with indisputable aspects of the medical record, conclusively preclude Claimant's qualification under the listings at step three."  *Fischer-Ross*, 431 F.3d 735.  A reviewing court may thus "supply a missing dispositive finding . . . where, based on material the ALJ did at least consider (just not properly), [the Court] could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way."  *Id*. at 733-34 (Tenth Circuit precedent does not "require a remand for a more thorough discussion of the listings when confirmed or unchallenged findings made elsewhere in the ALJ's decision confirm the step three determination under review"); *see also Carpenter v. Astrue*, 537 F.3d 1264, 1268 (10th Cir. 2008) ("the ALJ erred by failing to discuss Listing 12.05C [sic], and his findings elsewhere in his decision are inadequate to render that error harmless by unambiguously negating Mrs. Carpenter's claim to satisfy the elements of that listing").

      Thus, the Court will examine the ALJ's findings at steps four and five.  The ALJ found "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not

credible to the extent they are inconsistent with the above residual functional capacity assessment." R. at 13. The ALJ noted that, in November 2009, plaintiff was diagnosed with benign essential hypertension, but was not treated again until September 2010, when plaintiff admitted to his physician that he was not disabled and could work. *Id.* (citing R. at 186). Plaintiff failed to return for a follow-up examination, but began complaining of abdominal pain in April 2011. R. at 13. Later in 2011 plaintiff was examined by P.A. Davenport, who noted: "patient has essentially admitted that he is trying to 'find' health problems that will support his disability case & I think a lot of his medical questions/complaints stem from this goal" and plaintiff "admits he is trying to 'find more things wrong with me' so he can get SSI approved." R. at 226-27. The ALJ noted that Dr. Beauman diagnosed plaintiff with right groin pain, but opined that the condition would not impose any limitations for 12 continuous months. R. at 14 (citing R. at 203). Based upon this evidence, the ALJ concluded that plaintiff's credibility was suspect because, although plaintiff alleged severe pain, he received very little actual treatment and the level of intervention and treatment was fairly mild. R. at 15. The ALJ concluded that plaintiff's true limitations may not be as severe as he claimed.

The ALJ also noted that, at the hearing, plaintiff admitted to receiving unemployment benefits, which require a person to be able to work, available to work, and willing to seek and accept work. R. at 15. Plaintiff also admitted that he had looked for other work after he was terminated from his last job. R. at 27. The ALJ found that this testimony was inconsistent with a claim for disability. In addition, the ALJ found that plaintiff's contact with physicians appeared to be directed at generating evidence for his disability application and noted that plaintiff failed to make follow-up

appointments and otherwise follow through with treatment. The ALJ did find that plaintiff's obesity was a severe impairment. R. at 14-15.

With regard to medical opinions, the ALJ stated that she gave plaintiff the benefit of the doubt by adopting the limitations imposed by his physical therapist, which were more extensive that those suggested by Dr. Beauman. R. at 15; *compare* R. at 213-16 *with* R. at 203. The ALJ found that the RFC takes into account objective findings, but generously considers the claimant's subjective complaints. The Court agrees that the ALJ's adoption of the limitations suggested by plaintiff's physical therapist gives considerable weight to plaintiff's subjective complaints and finds that the RFC is supported by substantial evidence.

The ALJ found that plaintiff's RFC prohibited him from performing past work, and, given that plaintiff's RFC included sedentary restrictions, the ALJ asked the VE to determine whether jobs exist in the national economy for an individual with claimant's age, education, work experience, and RFC. R. at 17. The VE testified that such an individual would be able to perform jobs such as food and beverage order clerk and packing and filling machine operators. R. at 38-40. Plaintiff questioned the VE about whether such jobs would accommodate his limitations, but presented no additional evidence. R. at 40-41. The ALJ found that the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles. The ALJ concluded: "A finding of 'not disabled' is therefore appropriate under the framework of the above-cited rule." R. at 16.

In light of the medical evidence, and inconsistencies contained in plaintiff's hearing testimony and behavior, as well as the testimony of the VE, the Court finds that

the ALJ's findings at steps four and five are based upon substantial evidence. The Court can confidently say that no reasonable administrative factfinder could have resolved the factual determinations with respect to step three in any other way. *See Fischer-Ross*, 431 F.3d at 733-34.

### 3. Hypothetical Questions Directed at the Vocational Expert

Plaintiff argues that the ALJ erred in failing to ask the VE if a light duty occupation could accommodate someone with plaintiff's characteristics and RFC who was under the influence of medications with impairing side effects and who must ambulate with a cane. Docket No. 19 at 3. Plaintiff cites *Matthews v. Shalala*, 10 F.3d 678 (9th Cir. 1993), for the proposition that a vocational expert's hypothetical answers must reflect all of the claimant's limitations.[3] Docket No. 19 at 5.

In *Matthews*, the Ninth Circuit found that the ALJ's failure to include in a hypothetical question a limitation on the plaintiff staying in one position was harmless error because the claimant had already testified that his former job required both sitting and standing. 10 F.3d at 681. The court also noted that the ALJ, relying on medical evidence, found the claimant's pain complaints to lack credibility. *Id.* "Although [clamant] argues that the ALJ ignored the staying in one position limitation in deciding whether he could return to work, we think it more likely that the ALJ, having considered this limitation, dismissed its applicability . . . after considering the other evidence." *Id.*

"Hypothetical questions to a vocational expert need only include those limitations

---

[3]Defendant fails to separately respond to this argument, except to argue that, because there was no evidence that plaintiff suffered side effects, the ALJ was not required to include medication side effects in her questions to the VE. Docket No. 20 at 10 n.3.

14

that the ALJ finds are established by substantial evidence." *Sandoval v. Barnhart*, 209 F. App'x 820, 825 (10th Cir. 2006) (citing *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995)). For the reasons stated above, the Court cannot conclude that plaintiff met his burden of presenting objective evidence suggesting the existence of medication side effects. *See Hawkins*, 113 F.3d at 1167. Thus, the ALJ had no duty to conduct further investigation on this point and the record is otherwise devoid of any indication that medication side effects would have had a material impact on the disability decision. As such, the Court concludes that, even if the ALJ erred in failing to include medication side effects in hypothetical questions to the VE, such error was harmless. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

The Court turns to whether or not the ALJ erred in failing to include ambulating with a cane as a limitation in hypothetical questions posed to the VE. The ALJ did not make a specific finding that plaintiff did not require a cane. However, at the hearing plaintiff was asked about his use of a cane:

> Q. Did a doctor prescribe it or did you just get it on your own?
>
> A. I just got it on my own.
>
> Q. Why do you need to use the cane?
>
> A. It just helps me alleviate any kind of movement or getting up I need to do occasionally. I should have always had one but just been limping around most of the time.
>
> Q. So do you use it all the time or just when you go out?
>
> A. When I go out or move around, you known [sic] . . . . I stay in a shelter so I just kind of use it half the time there and half the time on the streets.

R. at 30. Plaintiff's claimed need for a cane is not supported by the medical evidence in

the record.  P.A. Davenport noted that she "told [plaintiff] for the 3rd time that if he feels he needs a cane he can purchase one from any medical supply store, but I will not write a [prescription]."  R. at 228.  The RFC assessment completed by physical therapist David Weber did not indicate that plaintiff required a cane to walk during the workday.  R. at 236.  The RFC assessment completed by Dr. Beauman noted that plaintiff "was able to walk to the examination room without assistance" and that plaintiff had no limitations on his walking capacity.  R. at 201, 203.  Thus, plaintiff's hearing testimony is the only evidence that he requires a cane, but plaintiff testified only that he required a cane for walking around the shelter or when he walks to the library or other places, which does not necessarily reflect on his ability to perform light work without a cane.  The ALJ found that plaintiff's hearing testimony lacked credibility, R. at 15, and there is no medical evidence suggesting the conclusion that plaintiff required a cane to perform light work.  Thus, the Court cannot conclude that substantial evidence existed that plaintiff required a cane to perform light work.  The Court finds that the ALJ did not err in failing to ask the VE a hypothetical question involving use of a cane and that, even if it was error to fail to include "ambulating with a cane" as a limitation in the hypothetical questions posed to the VE, such error was harmless.  *See Allen*, 357 F.3d at 1145.

### 4. The Administrative Record

Plaintiff appears to argue that the administrative record does not contain evidence of an examination performed in March 2011 at the Summit Medical Clinic, after which plaintiff claims he "was granted 6 months disability."  Docket No. 19 at 4.  Plaintiff fails to provide any records or other documentation supporting his claim and does not specifically ask the Court to consider such evidence or remand the case.

Defendant questions whether such evidence exists and argues that plaintiff has failed to show that good cause exists for the failure to incorporate such evidence into the record prior to the hearing. Docket No. 20 at 16-17.

Although "[d]isability hearings are nonadversarial" and that the "ALJ has a duty 'to ensure that an adequate record is developed,'" *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007), plaintiff still bears an independent responsibility of submitting evidence for the ALJ's review and showing good cause for failing to do so. *See* 42 U.S.C. § 405(g); *Wooding v. Commissioner of Social Security*, 2010 WL 4261268, at *6 (W.D. Va. Oct. 29, 2010) ("Not only could Plaintiff have done her due diligence and obtained her evidence prior to the hearing, the law requires her to do just that, and provide good cause if she did not." (citing 42 U.S.C. § 405(g)). Plaintiff does not explain why such evidence was not submitted earlier and does not argue that any failure to obtain such evidence rests with the Commissioner. To the contrary, at the October 28, 2011 hearing, the ALJ asked if plaintiff had received any medical treatment from facilities other than Peak Vista Community Health Center and Memorial Health Services and plaintiff responded that he had not. R. at 25. The Court is unaware of any mention of Summit Medical Clinic in the record. To the extent that plaintiff argues that this case should be remanded to allow the ALJ to consider new evidence, the Court finds that plaintiff has failed to specify what new evidence is available and failed to show good cause for failing to obtain, or at least calling the Commissioner's attention to, such evidence prior to the hearing.

## III. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the decision of the Commissioner that plaintiff Ernest W. Freeman was not disabled is AFFIRMED.


DATED March 31, 2014.

                                               BY THE COURT:

                                               s/Philip A. Brimmer
                                               PHILIP A. BRIMMER
                                               United States District Judge